IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARK R. CONTE,
       Plaintiff,

vs.                                Case No.: 3:13cv463/MCR/EMT

WINN DIXIE STORES, INC.,
       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Mark R. Conte ("Conte") commenced this employment discrimination action in the Circuit Court in and for Santa Rosa County, Florida. Defendant Winn-Dixie ("Winn-Dixie") removed the action to this court (doc. 1). In Conte's amended complaint, he brings employment discrimination claims, based upon his race (white) and age, under 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981a, 29 U.S.C. § 629, *et seq.* ("ADEA"), and Chapter 760 of the Florida Statutes ("Florida Civil Rights Act") (*see* doc. 9). He also brings retaliation claims under Title VII, the ADEA, 42 U.S.C. § 1981a, and the Florida Civil Rights Act (*id.*). As relief, he seeks "reinstatement to the same position that Plaintiff held before the discriminatory and retaliatory personnel actions or to an equivalent position," reinstatement of all benefits and seniority rights, compensatory damages, an injunction enjoining Winn-Dixie from future violations of the law, and attorney's fees and costs (*id.*).

Pending before the court is Winn-Dixie's Motion to Enforce Settlement (doc. 29). Winn-Dixie claims it entered into a verbal settlement agreement with Conte on February 18, 2014, but thereafter Conte refused to sign the written agreement. Conte opposes the motion, contending a settlement agreement never existed (doc. 37). The case was referred to the undersigned by the district judge to conduct evidentiary and such other proceedings as are required, and to enter a report

and recommendation containing proposed findings of fact and conclusions of law and recommended disposition of the case (*see* doc. 38).  After careful consideration of the issues raised in the parties' submissions, and the evidence adduced at the hearing, it is the opinion of the undersigned that Winn-Dixie's motion should be granted.

"Under federal law, a district court has inherent power to summarily enforce settlement agreements entered into by parties litigant [sic] in a pending case." Ford v. Citizens and S. Nat'l Bank, Cartersville, 928 F.2d 1118, 1121 (11th Cir. 1991) (internal quotation marks omitted).  A motion to enforce the settlement agreement essentially is an action to specifically enforce a contract and, as such, is a matter to be resolved by the court rather than by a jury even though it may involve factual disputes.  *See id.* at 1122–22 (internal quotation marks omitted).  "[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." Kent v. Baker, 815 F.2d 1395, 1400 (11th Cir. 1987). "However, where material facts concerning the existence of an agreement to settle are in dispute, the entry of an order enforcing an alleged settlement agreement without a plenary hearing is improper." Mass. Cas. Ins. Co. v. Forman, 469 F.2d 259, 260 (5th Cir. 1972) (citations omitted)[1]; *see also* Lee v. Hunt, 631 F.2d 1171, 1177 (5th Cir. 1980) ("Insofar as material facts are disputed in the course of a proceeding to enforce a settlement agreement, the district court should hold a hearing to obtain evidence on the factual matters in dispute.").

Principles governing Florida contract law apply to the interpretation and enforcement of settlement agreements. *See* Resnick v. Uccello Immobilien GMBH, Inc., 227 F.3d 1347, 1350 (11th Cir. 2000); Londono v. City of Gainesville, 768 F.2d 1223, 1227 (11th Cir. 1985); Mass. Cas. Ins. Co., 469 F.2d at 261; *see also* McArthur v. Dovetree Prod., Inc., No. 4:12cv571/WS/CAS, 2013 WL 4041601, at *2 (N.D. Fla. Aug. 8, 2013) (unpublished) (citing Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985)).  Settlement agreements are favored as a means to conserve judicial resources, and courts will enforce them when it is possible to do so. *See* Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc., 704 So. 2d 669, 673 (Fla. 1st DCA 1997).

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

Oral settlement agreements are enforceable under both federal and Florida law. *See, e.g.*, United States v. Pepper's Steel & Alloys, Inc., 289 F.3d 741, 742 (11th Cir. 2002) (referring to a prior case on appeal where the court found that the insurer's oral offer to settle for $2 million, accepted two years later, formed a valid settlement agreement); McArthur, 2013 WL 4041601, at *3; Bankers Sec. Ins. Co. v. Brady, 765 So.2d 870, 872–73 (Fla. 5th DCA 2000) (holding that an oral settlement agreement between the parties' representatives with settlement authority was binding); Long Term Mgmt., Inc., 704 So. 2d at 673 (holding that a verbal settlement agreement is enforceable); Boyko v. Ilardi, 613 So. 2d 103, 104 (Fla. 3d DCA 1993) (holding that "execution of settlement documents was not a condition precedent to the oral settlement agreement, but rather a procedural formality which both parties to the settlement agreement were obliged to perform"). "As long as an intent to settle essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the Courts of this state." Allapattah Serv., Inc. v. Exxon Corp., Nos. 05–21338, 91–0986, 2007 WL 7756735, *2 (S.D. Fla. Sept. 26, 2007) (unpublished); *see also* Dania Jai–Alai Palace, Inc. v. Sykes, 495 So. 2d 859, 862 (Fla. 4th DCA 1986) (pointing out that "Florida law does not require that a settlement agreement be in writing.").

To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element. *See* Spiegel v. H. Allen Holmes, Inc., 834 So. 2d 295, 297 (Fla. 4th DCA 2002) (citation omitted). The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement. *See* Carroll v. Carroll, 532 So. 2d 1109 (Fla. 4th DCA 1988). Where the opposing party's counsel assented to the terms of the agreement, the party seeking to enforce the settlement agreement must show that counsel had clear and unequivocal authority to enter into the agreement. *See* Long Term Mgmt., Inc., 704 So. 2d at 674; *see also* Rushing v. Garrett, 375 So. 2d 903, 905 (Fla. 1st DCA 1979) (citations omitted). Mutual assent does not mean that two minds must agree on one intention; rather, the formation of a contract depends on the parties having said the same thing, not on their having meant the same thing. *See* Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957). A trial court's finding that there was a meeting of the minds must be supported by competent substantial evidence. *See* Don L. Tullis and Assoc., Inc. v. Benge, 473 So. 2d 1384 (Fla. 1st DCA 1985).

The undersigned held an evidentiary hearing on Winn-Dixie's motion on August 12, 2014. The undersigned received evidence of the relevant events from the persons who were parties to the settlement discussions:  Conte, Conte's then-counsel Marie Mattox and Erika Goodman, and Winn-Dixie's counsel, David Wiley.   Attorney Mattox testified she has practiced in the area of employment law, representing plaintiffs, for more than twenty-five years.  She testified that the number of cases she has settled is "in the high hundreds," if not thousands.   Attorney Mattox testified that after Attorney Wiley deposed Mr. Conte in this case, Wiley e-mailed her and co-counsel Attorney Goodman a letter, dated February 11, 2014, stating, in relevant part:

> As Mr. Conte's deposition made clear, . . . he has admitted to conduct which subjects him to discharge for clear violations of Company policy.[2]  However, to bring this matter to a prompt resolution, Winn-Dixie will allow Mr. Conte to voluntarily resign his employment in exchange for $2,000, less applicable withholding, to cover any alleged damages as well as any attorney's fees or costs he may have incurred.  This offer will also require Mr. Conte to dismiss his lawsuit, execute a full waiver and release and agree to other common settlement terms and conditions (*e.g.* confidentiality, no-rehire, etc.).

(*see* Defendant's Exhibit A).   Attorney Mattox testified she forwarded Wiley's letter, via e-mail, to Conte on February 12, 2014 (*see* Defendant's Exhibit G).  Mattox testified that also on February 12, she and Conte discussed Winn-Dixie's settlement offer in a telephone conversation, and she advised Conte that Winn-Dixie's offer required him to resign.[3]   She testified that during that telephone conversation, Conte authorized her to communicate a counteroffer consisting of the same terms but an increased payment by Winn-Dixie of $5,000.00, instead of $2,000.00.  Attorney Mattox testified Conte then e-mailed her and instructed, "If you settle call me at Winn Dixie" (*see* Defendant's Exhibit G (a copy of Conte's February 12, 2014, email stating same)).

---

[2] Attorney Wiley identified this conduct as Conte's claiming on his employment application that he had:  (1) never been convicted of a felony, when in fact he had previously been convicted of first degree murder; and (2) obtained a Bachelor's Degree in English from Florida State University ("F.S.U."), when in fact Conte had not obtained a degree (though he attended F.S.U.) (*see* Defendant's Exhibit A).

[3] The undersigned ruled at the evidentiary hearing that Conte waived the attorney/client privilege as to discussions between him and Attorney Mattox regarding settlement of this case.

Attorney Mattox testified that on February 18, 2014, she received an e-mail from Attorney Wiley stating that Winn-Dixie was not willing to pay $5,000.00, but it would increase its monetary payment to $3,000.00, in exchange for Conte's resignation and "all of the typical settlement terms and conditions (e.g. full waiver and release, no-rehire, confidentiality, etc.)" (*see* Defendant's Exhibit B). Attorney Mattox testified she spoke with Conte on the telephone the same day, February 18, and told Conte that Winn-Dixie increased its offer of monetary payment to $3,000.00. Mattox testified she told Conte that her attorney's fees and costs totaled $1,500.00, so he would actually receive $1,500.00, and the remainder would be applied to her fees and costs. Mattox testified Conte refused, so she told him she would absorb her costs and reduce her share of the $3,000.00 monetary award to $1,200.00, and he (Conte) could keep $1,800.00. Mattox testified Conte responded, "Done deal," or words to that effect. Mattox testified co-counsel Goodman was standing across the desk from her while she was talking to Conte, and upon Conte's acceptance of the offer, she gestured to Goodman, with a "thumb's up," that Conte agreed to settle. Attorney Mattox testified she then e-mailed Attorney Wiley that Conte accepted Winn-Dixie's offer, and that she would notify the court that the case had been resolved upon the parties' confirming their agreement in writing (*see* Defendant's Exhibit C). Mattox testified she received an e-mail from Attorney Wiley stating he was glad they were able to resolve the case, and he would draft a written settlement agreement and forward it to her (*see id.*). Attorney Mattox testified unequivocally that Conte accepted Winn-Dixie's settlement offer during her February 18 telephone conversation with him, and she would not have e-mailed Wiley stating Conte accepted the offer if Conte had not done so.

Mattox testified she received a draft settlement agreement from Wiley via e-mail on February 19, 2014 (*see* Defendant's Exhibit D).[4] Mattox testified she was in the process of reviewing the written settlement agreement when she received an e-mail from Conte, on February 24, 2014, stating, "Tell Winn Dixie if they don't want me to work at their store, they'll have to fire me and take their chances in court. If you want to quit representing me I will understand." (*see* Defendant's

---

[4] The draft written settlement agreement was admitted into evidence at the evidentiary hearing with the qualification that Attorney Wiley modified paragraph 1 to reflect that the sum of $3,000.00 would be paid by check made payable to Mark R. Conte (the draft agreement sent to Attorney Mattox on February 19, 2014, stated that the check would be made payable to her, but Wiley modified the draft after Mattox withdrew from the case, and in preparation for the settlement conference held on June 23, 2014, at which Conte represented himself) (*see* Defendant's Exhibit H).

Exhibit G).  Mattox testified she responded, "Mark—we have accepted the settlement offer that you authorized.  As you are well aware, a condition of settlement is you leaving Winn Dixie.  Are you now not honoring your agreement to settle?" (*see id.*).

Mattox testified that on February 25, 2014, Conte sent her the following e-mail:

Although you did everything you could to make me agree with their offer, I said it was okay to send the agreement papers and I would look at it.  I did not say I would sign it.  I was very clear on that.

If they think they could just fire me for my 47 year old conviction, then they will like me not doing this deal.  It wasn't hard to turn down $1,800.  That doesn't even make up for all my lost wages.

(*see* Defendant's Exhibit G).

Mattox testified she responded in an e-mail:

Mark—unbelievable that you would actually write the below.  I cut my costs for you so that you would walk with $1,800 so that you would have more money in your pocket.  I did not have to do that.  Quite frankly, if you don't want to sign a settlement document, that is up to you.  You were not "very clear" on not signing anything as we did not have a conversation about you signing anything.  That issue never came up.  When you say that it "wasn't hard to turn down $1,800," you have settled your case, Mark and I am not sure what you are talking about.

(*see* Defendant's Exhibit G).

Attorney Mattox testified Conte advised her he was terminating her representation because she was "conspiring" with Attorney Wiley.  She testified she notified Attorney Wiley on February 26, 2014, that Conte terminated her and Ms. Goodman as counsel (*see* Defendant's Exhibit E).  Conte e-mailed Attorney Wiley that same day accusing Mattox of illegally conspiring with Wiley to "make an agreement" without his consent (*see* Defendant's Exhibit F).

During Conte's testimony at the evidentiary hearing, he acknowledged he received a copy of Attorney Wiley's February 11, 2014 letter that outlined the terms of Winn-Dixie's settlement offer.  He also testified he knew that his resignation from Winn-Dixie was a term of the settlement offer.  Conte testified he never discussed a counter-offer of $5,000.00 with Attorney Mattox.  He testified he and Mattox discussed Winn-Dixie's $3,000.00 offer on February 18, 2014, but he rejected the offer six times during that conversation.  Conte testified that Mattox was authorized to negotiate with Winn-Dixie, but he never approved a settlement amount, nor did he agree to a

settlement agreement.   Conte testified he told Attorney Mattox during their February 18 conversation, "Send me the agreement papers, but I can't guarantee I'll sign them."[5]

Conte testified he reported to work at Winn-Dixie on February 24, 2014, and his manager informed him that the legal department had advised him that Plaintiff agreed to resign.  Conte testified that when he returned home from work that day, he sent the e-mail to Mattox stating, "Tell Winn Dixie if they don't want me to work at their store, they'll have to fire me and take their chances in court.  If you want to quit representing me I will understand." (*see* Defendant's Exhibit G).

Erika Goodman testified she was co-counsel with Attorney Mattox on Conte's case.  She testified she was present in Mattox's office on February 18, 2014, when Mattox discussed Winn-Dixie's settlement offer with Conte on the telephone.  Goodman testified she heard Mattox communicate the $1,500.00/$1,500.00 split, and then reduce her share to $1,200.00.  Goodman testified Mattox then gestured to her, indicating that Conte accepted the offer.

At the evidentiary hearing, not only did Conte and Mattox disagree about whether Conte accepted Winn-Dixie's settlement offer during the February 18 telephone conversation, they also disagreed about other aspects of that telephone conversation.  For example, in Conte's written response to Winn-Dixie's Motion to Enforce Settlement, he asserted Mattox tried to pressure him to settle by making specific comments about the district judge (*see* doc. 37).  Conte also alleged (in his written response) that Mattox further tried to pressure him to settle by telling him she would not get off the telephone until he agreed, even though he told her he was late for a meeting, and the person taking him to the meeting was waiting in a car outside with the motor running.  Mattox testified at the evidentiary hearing that she absolutely did not make the comments about the district judge that Conte alleged she made.  She further testified that Conte never told her he had to go to a meeting, and he never mentioned that a running car was waiting for him.  Attorney Goodman corroborated Mattox's testimony.  She testified she was present in Mattox's office during her conversation with Conte, and Mattox never made the comments regarding the district judge that

---

[5] In Conte's written response to Winn-Dixie's Motion to Enforce Settlement, he asserted he ended his conversation with Attorney Mattox by stating, "Okay, send me the agreement papers and I will read them.  But no guarantees." (doc. 37 at 4).

Conte alleged in his written response (*see* doc. 37).  Goodman also testified that Mattox never refused to get off the telephone until Conte gave her an answer about the settlement offer, nor did Mattox otherwise pressure Conte to accept the offer.  Mattox and Conte also disagreed as to whether a written settlement agreement was ever mentioned during their conversation.  Conte testified he told Mattox to send him "the agreement papers"; whereas Attorney Mattox testified that no mention was made of a written settlement agreement during their conversation.

Based upon the evidence adduced at the evidentiary hearing, the undersigned has determined that competent substantial evidence supports the following findings of fact and conclusions of law. First, Conte authorized Attorney Mattox to engage in settlement negotiations with Winn-Dixie. Second, as set forth in Attorney Wiley's letter to Attorneys Mattox and Goodman dated February 11, 2014, Winn-Dixie's offer to settle this case included the following essential elements:  (1) payment by Winn-Dixie of $2,000.00, less applicable withholding taxes, to cover Conte's alleged damages and Mattox's attorney's fees and costs, (2) Conte's voluntary resignation from employment with Winn-Dixie, (3) Conte's dismissing the instant lawsuit, (4) Conte's executing a full waiver and release, and (5) Conte's agreeing to other common settlement terms and conditions (for example, confidentiality and no-rehire provisions).  Third, on February 12, 2014, Conte received a copy of Winn-Dixie's February 11 letter, and knew the essential terms of Winn-Dixie's settlement offer. Fourth, during the telephone conversation between Conte and Attorney Mattox on February 18, 2014, Conte understood that Winn-Dixie modified the monetary payment term of the settlement offer from $2,000.00 to $3,000.00, less applicable withholding taxes, with the other essential terms remaining unchanged. Fifth, during the telephone conversation between Conte and Attorney Mattox on February 18, 2014, Conte verbally authorized Attorney Mattox to accept Winn-Dixie's offer and thus assented to a settlement agreement with the essential terms being the following:  (1) payment by Winn-Dixie of $3,000.00, less applicable withholding taxes, to cover Conte's alleged damages and Mattox's attorney's fees and costs, (2) Conte's voluntary resignation from employment with Winn-Dixie, (3) Conte's dismissing the instant lawsuit, (4) Conte's executing a full waiver and release, and (5) Conte's agreeing to other common settlement terms and conditions (for example, confidentiality and no-rehire provisions).  Sixth, even if Conte equivocated as to whether he would sign a written settlement agreement, this does not change the fact that he verbally agreed to the

essential terms of Winn-Dixie's offer.  Finally, a valid, enforceable settlement agreement exists between Conte and Winn-Dixie, with the following essential terms:  Winn-Dixie will pay $3,000.00, less applicable withholding taxes, in exchange for Conte's voluntary resignation, dismissal of this lawsuit, execution of a full waiver and release, and agreement to other common settlement terms and conditions (for example, confidentiality and no-rehire provisions).

Accordingly, the undersigned respectfully **RECOMMENDS**:

1.     That Defendant's Motion to Enforce Settlement (doc. 29) be **GRANTED**.

2.     That Plaintiff be directed to execute and send to Defendant's counsel, within **FOURTEEN (14) DAYS** from the date of the district court's order on this Report and Recommendation, a written document which includes Plaintiff's full waiver and release, a confidentiality provision, and a no-rehire provision.

3.     That within **SEVEN (7) DAYS** from Defendant's receipt of the executed written document described *supra*, Defendant issue payment to Plaintiff in the amount of $3,000.00 and file a notice of settlement with the court.

At Pensacola, Florida this 18<u>th</u> day of August 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**